## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERONIMO F. ROSADO, JR., | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-3717 |
| | : | |
| JAMES A. WHITCRAFT, *et al.*, | : | |
| *Defendants*. | : | |

## MEMORANDUM

**PAPPERT, J.**                                      **December 15, 2023**

Geronimo F. Rosado, Jr. initiated this civil action by filing a *pro se* Complaint raising various claims relating to his housing as well as the housing of his fiancé, Lauren E. Wissman.  Rosado seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Rosado leave to proceed *in forma pauperis* and dismiss the Complaint.  Rosado will be given an opportunity to file an amended complaint as to those claims the Court dismisses without prejudice.

I[1]

Rosado's Complaint is lengthy and disjointed, making the allegations and claims difficult to discern.  He sues James A. Whitcraft, identified as the landlord for 401 W. Gay Street, West Chester, Pennsylvania; Jeremiah F. Kane, identified as Whitcraft's attorney; PGM Real Estate & Associates LLC, a property management company ("PGM"), and its employees Dan Boyles, April Landis, Justin Gail, and Jamie Pilkerton.

---

[1] The following allegations are taken from the Complaint and public records of which the Court takes judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).

(Compl. (ECF No. 2) at 8-9.)[2]  Rosado also names Anthony Kates, the property owner of 719 Strickersville Road, Landenberg, Pennsylvania.  (*Id*.)  Rosado asserts that he "Reserves the right to amend any Jane or John does legally Responsible after discovery."  (*Id*. at 9.)

Rosado[3] avers that he has resided at 401 W. Gay Street since April 1997, first with his grandmother, and then with his father. (*Id*. at 15-16.)  However, on December 9, 2021, Rosado's father moved out,[4] and Rosado "became the sole tenant" at W. Gay Street.  (*Id*. at 16.)  Prior to December 9, 2021, Rosado "was living and traveling back and forth" between W. Gay Street and his fiancé's place of residence at 719 Strickersville Road, Landenberg, Pennsylvania."[5]  (*Id*.)  On December 10, 2021, Rosado informed his landlord, Whitcraft, that his father had moved out, and Rosado requested that a "New Lease be drawn up for [him] and [his] daughter."  (*Id*. at 20.)  Whitcraft allegedly refused, telling Rosado that the current lease was still valid.  (*Id*.)

By April 6, 2022, Rosado was "struggling with rent," so he applied for aid through Pennsylvania's 211 rental assistance program.  (*Id*.)  Rosado alleges that he received enough rental assistance to cover rent payments from March through June of

---

[2] The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

[3] Rosado alleges that he is "On disability pursuant both <u>ADAAct</u>. And <u>Section 504 of the Rehabilitation Act of 1973;</u> on (SSDI) being legally blind, and on Public Assistance." (Compl. at 6.) (underline emphasis in original).

[4] Rosado alleges that his father moved out as a result of Whitcraft's harassment and failure to make repairs.  (Compl. at 16.)  Rosado also avers that Covid-19 caused his "Father to be laid off Without remedy to pay rent, bills, [and Rosado's] only recourse at the time was (SSDI) payments and to take out personal loans."  (*Id*.)

[5] Rosado and his fiancé, Lauren Wissman, share a daughter together.  (Compl. at 16.)

2022.  (*Id.* at 20-21.)  Whitcraft disagreed, and allegedly told Rosado that some of the money received from the rental assistance program was for past due rent.  (*Id.* at 21.) Whitcraft told Rosado his rent was only paid through April 1, 2022.  (*Id.*)  When Rosado tried to explain that Whitcraft was incorrect, Whitcraft allegedly responded, "You know what, have you thought about Me raising the rent to $750.00 to pay for the repairs your [sic] requesting huh think about that ill [sic] be in contact with you soon."  (*Id.*) (underline emphasis in original).

Rosado avers that Whitcraft "continued to harass, stalk, and interrogate" him about rent payments and questioned Rosado as to how he would be able to make rent payments after July 1, 2022 since Rosado's father was no longer there and Rosado did not have a job and had been  seeking rental assistance.  (*Id.* at 21-22.)  Rosado allegedly explained to Whitcraft that the rent would be paid each month without further delay because "he applied for cash Assistance through welfare, and was approved on April 21, 2022, and that he is on disability."  (*Id.* at 22.)

On August 1, 2022, Whitcraft "call[ed] on [Rosado] to join him for a conference in the yard" while Wissman was present.  (*Id.* at 27.)  Whitcraft indicated that he wanted to discuss a rental increase.  (*Id.*)  During the course of the discussion, Whitcraft allegedly asked Rosado how much cash assistance and disability payments he received. (*Id.*)  Rosado questioned how Whitcraft could justify raising the rent when Whitcraft refused to make repairs,[6] and the apartment "would not pass inspection if it wasn't for

---

[6] Rosado alleges that Whitcraft intentionally failed to make required repairs to the rental property, and, instead, required him and his father to make their own repairs.  (Compl. at 23-26.)  Whitcraft allegedly told Rosado and his father that if they failed to complete certain tasks, it would "cause failed inspection And eviction."  (*Id.* at 23.)  To that end, Rosado alleges that they were required to buy supplies so that they could paint the entire apartment in June 2021, repair and ultimately replace the kitchen sink in January 2022,

the fact [that] every Inspection [Whitcraft] coerce[s] [Rosado's] father to make the place clean" by hiding defects in the property. (*Id.* at 27-28.) Whitcraft advised Rosado that the rent would be increased by $125, to $650 per month, effective October 1, 2022. (*Id.* at 28.) Rosado asserts, however, that Whitcraft told him that he did not have to pay the rent because he wanted Rosado to save money and find another apartment by January 1, 2023. (*Id.*) However, Whitcraft told Rosado that he was required to pay the rent that was past due. (*Id.*) Rosado responded by telling Whitcraft that he was not entering into any agreement with him and that he would move out by November 28, 2022. (*Id.* at 29.)

On August 3, 2022, Whitcraft left a copy of a lease for Rosado to sign on the door to the apartment. (*Id.*) Rosado did not sign the lease and contends that Whitcraft showed up at the apartment at least four other times in September "banging, screaming, And yelling for [Rosado] to let him inside the apartment." (*Id.* at 29-30.) Rosado refused Whitcraft entry.[7] (*Id.*)

On September 25, 2022, Whitcraft left a "Vacate Notice" on the door of Rosado's apartment which stated, "You are hereby given notice to vacate this apartment on or

---

and replace the kitchen floor. (*Id.* at 24-26.) Rosado further avers that the kitchen and bathroom roofs were leaking in October 2022, and despite prior complaints to Whitcraft to get it fixed, Whitcraft neglected to do so. (*Id.* at 26.) The water leaks allegedly ruined Rosado's $500 printer, and Whitcraft refused to reimburse him for damages. (*Id.*) Rosado also asserts that Whitcraft refused to replace all electrical outlets and ceiling lights even though the outlets were "smoking, and leaking a gas smell." (*Id.*) Rosado contends that he was never fully reimbursed for all of the supplies he purchased, nor was he compensated for his labor and time. (*Id.* at 24-26.) Rosado contends that as a result of Whitcraft's deceitful and deceptive practices, he is "in complete debt" totaling $18,400. (*Id.* at 26.)

[7] Rosado says that during this period of time, his bike was stolen from the porch of his rental property on two occasions. (Compl. at 30.) Rosado asserts that he "believed Defendant James A. Whitcraft stole [his] bike [and was] being malicious." (*Id.*)

before October 31., 2022., <u>and as advised and discussed with you, the rent for October 1st., 2022, will be $650.00 your cooperation expected and appreciated</u>." (*Id.* at 31.) (underline emphasis in original). On October 10, 2022, Whitcraft issued another notice to vacate which provided as follows:

> You have (10) days from receipt Of this notice to vacate or pay rent before I will seek permission to evict you. This is not a judicial notice document.  By law. a court is the final authority in every eviction. And if you believe you are entitled to remain as a tenant, you or your lawyer may represent your case in court.

(*Id.*)  The notice further indicated that Whitcraft was seeking to end Rosado's tenancy because he owed $1,700 in rent payments from August, September, and October.  (*Id.* at 31.)  The notice further indicated as follows:

> Please note that the attached 9/25/22 notice posted on the above property on that date is still in effect and the landlord continues to require your vacation of the property per the terms of the lease in effect <u>at this time as the lease is a month-to-month lease</u>. Landlord requires <u>to vacate on or before October 31.,2022, even if the rent is paid up to date</u> at that time. . . . <u>Tenant has also not maintained the property</u> . . . <u>in a proper condition</u>, has <u>not cooperated with the Landlord in making repairs</u> and <u>has unknown person (women) living in the unit without permission of Landlord.</u> . . . from this point forward, please communicate only to the attorney for Mr. Whitcraft, Jerimiah F. Kane.

(*Id.* at 32.) (underline emphasis in original).  On October 11, 2022, Kane contacted Rosado on behalf of Whitcraft, allegedly telling him that if Rosado left the rental property now, he wouldn't have "to worry about paying anything." (*Id.*)

Public dockets indicate that Whitcraft initiated an eviction proceeding against Rosado and his father on October 17, 2022.  *See Whitcraft v. Rosado*, MJ-15101-LT-0000080-2022 (Chester Cnty.).  The dockets reflect that judgment was entered against Rosado and his father on October 26, 2022.  (*Id.*)  Rosado avers that he paid Whitcraft

the full amount of the judgment on March 20, 2023.  (Compl. at 33.)  Nevertheless,

Rosado avers that Kane and Whitcraft "misrepresented a false rent of judgment, by

execution of illegal eviction" and "cash[ed] out on a Judgment of rent's and attorney

fee's so owed, through Public Assistance, by (211 Rental Assistance) and refused to lift

the judgment." (*Id.* at 33-34.)  Rosado allegedly vacated the premises at W. Gay Street

on November 30, 2022.  (*Id.* at 34.)

Rosado avers that Whitcraft's "deceitful and deceptive Practice, acts, or conduct

directly violate[d] the Pennsylvania Implied Warranty of Habitability knowingly,

intelligently, and maliciously, while discriminating against [Rosado] because of his

race, and poor status, acted under color of law, in violation of the Fair Housing Act, and

violated Landlord obligations & Tenant Lease agreement for repairs, ultimately

causing father To move out and drink excessively and directly taking it out on son . . .

among that factor despite a legal binding agreement continued to harass both father

and [Rosado] . . . Causing both intentional and Emotional distress in violation of the

Fair Housing Act." (*Id.* at 23.)  Rosado also avers that Whitcraft and Kane used

"deceitful and deceptive practices to retaliate against him." (*Id.* at 50.)

Rosado also contends that Kane and Whitcraft "maliciously contacted

Defendants PGM Real Estate & Associates LLC. And Anthony Kate's to unlawfully

Evict [fiancé] from dwelling, in a conspiracy, under color of law, in violation of the Fair

Housing Equal Opportunity Section 8. Voucher causing a chain of events ultimately

losing voucher due to unable [to] find a dwelling by 05/31/23." (*Id.* at 34.)  Rosado

asserts that Whitcraft and Kane "acted in a conspiracy" with PGM, its employees, and

Kates "to secure illegal eviction 05/31/23 in connection with the 10/26/23 rent of

eviction, and illegal judgment paid on 03/20/23 for failure [to] Remove judgment, in violation of the Fair Housing act and consumer protection act." (*Id.*)

Rosado asserts that Defendants' actions violated numerous federal and state statutes and contends that "it is illegal to evict a tenant for verbal complaints of Lease violations." (*Id.* at 2-4, 9-14, 23, 53-54.) He seeks declaratory and injunctive relief, as well as monetary damages. (*Id.* at 5, 52-55.)

Rosado's Complaint contains numerous allegations with respect to his fiancé's rental property at 719 Strickersville Road, Landenberg, Pennsylvania. (Compl. at 35-49.) These allegations appear to concern actions taken by property manager, PGM, and its employees, as well as property owner, Kates, against Wissman. (*Id.*) More specifically, Rosado avers that Wissman received a notice from PGM on March 22, 2023 by certified mail, indicating that she was to vacate her apartment by May 31, 2023. (*Id.* at 35.) When Wissman initially logged into her PGM web portal, it indicated that her lease was terminated on October 26, 2022, the same day judgment was issued against Rosado. (*Id.* at 35.) Rosado contends, however, that "upon further review" of the web portal, Wissman's account then listed the lease termination date as February 1, 2023. (*Id.*) Rosado asserts that the "Defendant's deceitful, deceptive practices are attempting to cover up A crucial & critical date of 10/26/2[2] without due process of law, in violation of the Fair Housing Act." (*Id.*)

Rosado's allegations reference a meeting between Kates and Wissman that occurred on March 22, 2023, following her receipt of the notice to evict. (*Id.* at 35.) Wissman allegedly informed Kates of the eviction notice, and Kates claimed that he did not authorize the notice. (*Id.* at 36.) Rosado asserts that Kates acted inappropriately

towards Wissman during this meeting by speaking to her seductively and asking for

her phone number.  (*Id.* at 36-37.)  Despite this alleged inappropriate conduct, Rosado

avers that he continued to have a discussion with Kates, explaining to Kates in detail

about how he helped maintain the yard at Wissman's rental property.  (*Id.* at 38-41.)

Rosado also claims that PGM employee, Joe Edwards, "made direct sexual

advancements" towards Wissman, has been stalking her, and "has Falsely reported to

PGM" that Wissman denied maintenance entry into her rental property.  (*Id.* at 41-43,

45.)  Rosado further asserts that several PGM employees have entered Wissman's

"dwelling. without notice. Causing [fiancé] imminent fear to stay at dwelling, and

Taken shelter at (401 W. Gay St). by day return, by night leave, due to illegal entries

Without notice, causing intentional & emotional distress." (*Id.* at 42.)  Wissman

allegedly purchased cameras at her own expense in December 2022 because she felt

unsafe due to the unannounced entries by various PGM employees.  (*Id.* at 47-48.)

Rosado alleges that PGM intentionally failed to make required repairs to

Wissman's rental property, causing her to fail two state inspections on November 3,

2022 and December 22, 2022.  (*Id.* at 44.)  In particular, Rosado alleges that PGM failed

to fix the kitchen sink and a broken bedroom door at Wissman's rental property and

failed to install carbon monoxide and smoke detectors.  (*Id*. at 44.)  Rosado claims that

Wissman purchased carbon monoxide and smoke detectors, a shower head, and toilet

seat, at her own expense.  (*Id.* at 48.)

Rosado contends that the "Deceitful and deceptive practices" of PGM, Kates,

Boyles, Landis, Gail, and Pilkerton caused intentional and emotional distress as well as

direct discrimination in connection with the May 31, 2023 notice to vacate.  (*Id.* at 45,

48.)  Wissman has filed her own lawsuit raising various claims relating to her housing against several Defendants, including PGM, Kates, Boyles, Landis, Gail, and Pilkerton. *See Wissman v. PGM Real Estate LLC, Property Management*, No. 23-3153 (E.D. Pa.).

II

The Court will grant Rosado leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Rosado is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "'cannot flout procedural rules - they must abide by the same rules that apply to all other litigants.'"  *Id.*

9

III

Rosado's Complaint is lengthy, rambling, and disjointed, referencing several federal and state statutes as the basis for his claims.[8]  His allegations are not "simple, concise, and direct."  *See DiGenova v. Unite Here Local 274*, 673 F. App'x 258, 260 (3d Cir. 2016) (*per curiam*) (citing Fed. R. Civ. P. 8(d)(1)).  Nonetheless, the Court understands Rosado to allege that Defendants violated his constitutional rights, as well as his rights under the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA").  He also seeks to present numerous claims under state law.

A

Rosado appears to raise claims on behalf of his fiancé with respect to her rental property at Strickersville Road.  More specifically, Rosado asserts, *inter alia*, that PGM, its employees, and/or Kates issued Wissman an improper notice to vacate, stalked and made sexual advancements towards her, entered her rental property without notice causing her fear and distress, and failed to make required repairs to her rental property, which allegedly caused her to fail two state inspections.[9]  (Compl. at 35-49.)

Rosado may not represent or bring claims on behalf of his fiancé.  Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel"

---

[8] A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other."  *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).

[9] Although not entirely clear, Rosado also may be asserting that a conspiracy existed between the Defendants.  Rosado avers that following his eviction from Gay Street, Kane and Whitcraft "acted in a conspiracy" with PGM, its employees, and Kates to evict Wissman from her rental property.  (Compl. at 34.)  This appears to be a claim on behalf of Wissman.

10

in the federal courts.  Section 1654 thus ensures that a person may conduct his or her

own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d

876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the

choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth*

*Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).  However, *pro se*

litigants who are not attorneys, such as Rosado, may not pursue claims on behalf of

others.  *See Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d

Cir. 2018) ("Although an individual may represent herself or himself pro se, a non-

attorney may not represent other parties in federal court."); *Gunn v. Credit Suisse Grp.*

*AG*, 610 F. App'x 155, 157 (3d Cir. 2015) (*per curiam*) ("The federal courts have

routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims

on behalf of others in a representative capacity.") (internal citation and quotation

omitted).  Moreover, "a plaintiff must assert his or her own legal interests rather than

those of a third party" to have standing to bring a claim.  *See Twp. of Lyndhurst, N.J. v.*

---

To the extent that Rosado intends to state a claim on his own behalf under 42 U.S.C. §
1985(3),  he must allege (1) a conspiracy; (2) motivated by a racial or class based
discriminatory animus designed to deprive, directly or indirectly, any person or class of
persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and
(4) an injury to person or property or the deprivation of any right or privilege of a citizen of
the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of*
*Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have
allegedly conspired against a group that has an identifiable existence independent of the
fact that its members are victims of the defendants' tortious conduct").  "[T]o properly plead
an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial
agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615
F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of conspiracy will not suffice." *Bell Atl.*
*Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Complaint fails to allege concerted action
by the Defendants.  In other words, Rosado has not adequately alleged any factual basis
from which a conspiracy could be inferred.  Furthermore, nothing in the Complaint
suggests any factual basis for race- or class- based discrimination.  To the extent Rosado
invokes this statute, his claim is not plausible.

11

*Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted.).  The Court

will not consider allegations or requests for relief pertaining to anyone other than

Rosado, including the claims against Defendants PGM, Boyles, Landis, Gail, Pilkerton,

and Kates, who appear to have been named based on acts they allegedly took against

Wissman.  Accordingly, all claims asserted on behalf of Wissman will be dismissed

without prejudice.  The remainder of this Memorandum solely addresses the claims

Rosado raises on his own behalf.

B

The vehicle by which federal constitutional claims may be brought in federal

court is 42 U.S.C. § 1983.  "Section 1983 is not a source of substantive rights," but a

means through which "to vindicate violations of federal law committed by state actors."

*See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  "To state a claim under § 1983,

a plaintiff must allege the violation of a right secured by the Constitution and laws of

the United States, and must show that the alleged deprivation was committed by a

person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The

color of state law element is a threshold issue; there is no liability under § 1983 for

those not acting under color of law."  *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638

(3d Cir. 1995).

Whether a private entity is acting under color of state law – *i.e.*, whether the

defendant is a state actor subject to liability under § 1983 – depends on whether there

is "such a close nexus between the State and the challenged action' that seemingly

private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423

F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question,

[the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:  (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Rosado has not alleged facts to support a plausible conclusion that any of the named Defendants meet any of the foregoing tests, and nothing in the Complaint suggests any factual or legal basis for concluding that the Defendants are state actors who could be held liable under § 1983.  *See, e.g., Dejesus v. Vicky*, No. 21-1403, 2021 WL 1546228, at *3-4 (E.D. Pa. Apr. 20, 2021) (finding that employee of apartment complex and rental company itself were private individuals or entities involved in property rental and not state actors for purposes of constitutional claims) (citing cases); *see also Hussein v. New Jersey*, 403 F. App'x 712, 716 (3d Cir. 2010) (*per curiam*) (affirming dismissal of constitutional claims against landlord because landlord was not a state actor).  Accordingly, Rosado has not stated a plausible constitutional claim against any named Defendant, and any § 1983 claims will be dismissed without prejudice.

C

The FHA prohibits discrimination on the basis of race, color, religion, sex, familial status, or national origin, in a variety of real estate-related transactions.  *See* 42 U.S.C. § 3604.  The FHA's prohibition of discrimination "can be violated by either

13

intentional discrimination or if a practice has a disparate impact on a protected class."
*White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (*per curiam*) (citing *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011)); *El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 289-90 (E.D. Pa. 2020). Additionally, "[i]n 1988, Congress extended the Fair Housing Act to protect against discrimination on the basis of disability." *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995); Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (1988)). Those amendments, the FHAA, make it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A).[10]

The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . . . of this title." 42 U.S.C. § 3617. "A Section 3617 interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed any right granted or protected by [the FHA]; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct."

---

[10] "Under the FHAA, 'handicap' means 'a physical or mental impairment which substantially limits one or more of [a] person's major life activities.'" *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting 42 U.S.C. § 3602(h)(1)). (alteration in original). With respect to disability discrimination under § 3604(f), a plaintiff "may bring three general types of claims: (1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims, both of which arise under § 3604(f)(2), and (3) claims that a defendant refused to make 'reasonable accommodations,' which arise under § 3604(f)(3)(B)." *Id.*

*Revock*, 853 F.3d at 112-13 (internal quotations and footnote omitted).  Interference

under § 3617 may consist of harassment, provided that it is "sufficiently severe or

pervasive" as to create a hostile environment."  *Id.* at 113.  The regulations associated

with § 3617 make clear that the section prohibits acts directed at individuals "because

of" their membership in a protected class.  24 C.F.R. § 100.400(c)(2) (listing prohibited

conduct to include "[t]hreatening, intimidating or interfering with persons in their

enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial

status, or national origin of such persons").  "Harassment that intrudes upon the 'well-

being, tranquility, and privacy of the home' is considered particularly invasive."

*Revock*, 853 F.3d at 112 (quoting *Firsby v. Schultz*, 487 U.S. 474, 485 (1998)); *see also*

24 C.F.R. § 100.600.  A claim under § 3617 does not depend upon a substantive

violation of the FHA.  *Revock*, 853 F.3d at 112.

Section 3617 also prohibits "retaliating against any person because that person

reported a discriminatory housing practice to a housing provider or other authority."

*Id.* (citing 24 C.F.R. § 100.400(c)).  "To prevail on a § 3617 retaliation claim, a plaintiff

must demonstrate that (1) [he] engaged in a protected activity; (2) the defendant

subjected [him] to an adverse action; and (3) a causal link exists between the protected

activity and the adverse action."  *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891,

904 (E.D. Pa. 2017); *see also Davis v. Rubin*, 2022 WL 3037254, at *2 (3d Cir. Aug. 2,

2022) (citing 24 C.F.R. § 100.400(c)(6)) (evaluating an FHA retaliation claim and

concluding that "filing a complaint with HUD may have been protected activity" under

the FHA); *Norman v. Nw. Indiana CA Section 8*, No. 21-158, 2021 WL 4363012, at *4

(N.D. Ind. Sept. 24, 2021) (dismissing § 3617 retaliation claim on screening and finding,

15

*inter alia*, that plaintiff failed to adequately allege that she engaged in a protected

activity where she alleged retaliation based on "speaking out against" paying rent),

*reconsideration denied*, No. 21-158, 2021 WL 4516790 (N.D. Ind. Oct. 1, 2021), *and*

*reconsideration denied*, No. 21-158, 2021 WL 4860858 (N.D. Ind. Oct. 19, 2021); *Kris v.*

*Dusseault Fam. Revocable Tr. of 2017*, No. 18-566, 2019 WL 4647211, at *5 (D.N.H.

Sept. 24, 2019) (explaining that "'protected activity' includes the filing of complaints

with federal or local housing authorities, or even less formal means of protest, so long

as the complaint is related to unlawful discrimination . . . [b]ut complaints to HUD or

the local housing authority about general conditions of the apartment or

mismanagement of the apartment complex are not"); *Riley v. City of Kokomo*, 909 F.3d

182, 192 (7th Cir. 2018) (telephone call to HUD reporting mismanagement was not

protected activity because it was unreasonable to infer from the statement that plaintiff

reasonably believed she was reporting a discriminatory housing practice).

While Rosado seeks to present claims pursuant to the FHA, the rambling nature

of his allegations make it difficult to discern the true basis of these claims.  Throughout

his Complaint, Rosado asserts that needed repairs were not performed to the property

at Gay Street in violation of the FHA, and that he was evicted in violation of the FHA.

However, "[t]he Fair Housing Act does not . . . create some general federal cause of

action governing landlord-tenant disputes.  It is not enough for a plaintiff to merely

describe a series of housing maintenance concerns in his complaint to state a claim

under the FHA.  Instead, the plaintiff must plead some facts that plausibly link these

housing maintenance concerns or dissatisfaction with landlord-tenant proceedings" to

discrimination on the basis of race, color, religion, sex, familial status, or national

origin.[11] *Palencar v. Raijski*, No. 15-1189, 2016 WL 6908116, at \*5 (M.D. Pa. Nov. 9, 2016) (internal quotations, alterations and citations omitted), *report and recommendation adopted*, No. 15-1189, 2016 WL 6892841 (M.D. Pa. Nov. 23, 2016).

Rosado does not tie his allegations to his membership in a protected class.  He does not allege sufficient facts from which one could infer that a discriminatory purpose was a motivating factor behind the challenged actions, or that any Defendant's actions or practices disproportionately burdened a protected class of which Rosado is a member, so as to cause a disparate impact.  *See Wilson v. Hillsborough Twp. Constr. Dep't*, 779 F. App'x 969, 972 (3d Cir. 2019) (*per curiam*) ("[E]ven if Wilson could bring a claim under the FHA for defendants' licensing, inspection, and tax assessment decisions, her vague, conclusory speculations that those decisions were made for a discriminatory reason are insufficient to state a claim under the FHA."); *White*, 767 F. App'x at 334-35 (affirming dismissal of FHA claim and explaining that "it is not enough for White to merely allege a constitutional violation and state that Appellees discriminated against him; rather, White needed to elaborate and point to any context plausibly suggesting race discrimination. . . ."); *Jones v. 1260 Hous. Dev. Corp.*, No. 18-1420, 2018 WL 1757605, at \*3 (E.D. Pa. Apr. 11, 2018) (dismissing FHA claim as conclusory); *Palencar*, 2016 WL 6908116, at \*5 (finding that general claims regarding building maintenance failed to state an intentional discrimination claim under the FHA and were potentially actionable simply as a landlord tenant dispute under state law).

---

[11] Allegations of discrimination based on status as a Section 8 voucher holder fail to state a claim.  *See Dejesus*, 2021 WL 1546228, at \*5 (allegations of discrimination based solely on status as a Section 8 voucher holder, and not based on membership in a statutorily protected class, fail).

To the extent Rosado seeks to pursue a retaliation claim under § 3617 against Whitcraft or Kane because he complained about a lack of repairs, such a claim is not plausible.  Rosado simply alleges that he made "verbal complaints" regarding needed repairs, but his requests went unheeded.  (*See, e.g.,* Compl. at 16, 23-26.)  The conclusory allegations in the Complaint do not sufficiently link a protected activity to any adverse action.  *See Davis v. Rubin*, No. 20-6271, 2020 WL 7624833, at *3 (E.D. Pa. Dec. 22, 2020) (dismissing FHA retaliation claim on screening where plaintiff did not allege a protected activity involving complaints about discrimination); *El*, 315 F. Supp. 3d at 842 n.40 (dismissing retaliation claim because plaintiff failed to allege that he engaged in a protected activity such as filing a complaint with the Department of Housing and Urban Development).

While Rosado extensively references the FHA in his Complaint, his vague and disjointed allegations fall far short of stating any plausible FHA claim.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Rosado's FHA claims will be dismissed without prejudice.

D

Rosado asserts claims under Title II of the ADA and Section 504 of the RA.[12]
"Both the ADA and the RA require public entities . . . to provide, in all of their
programs, services, and activities, a reasonable accommodation to individuals with
disabilities." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019).
"Public entity" has been  defined as any state or local government, its agencies or
instrumentalities, and the National Railroad Passenger Corporation or any commuter
authority.  *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) (citing
42 U.S.C. § 12131); *see also Datto v. Harrison*, 664 F.Supp.2d 472, 486 (E.D. Pa. 2009).

Rosado's claims under Title II of the ADA and Section 504 of the RA are not
plausible because none of the named Defendants are public entities, and Rosado has
also failed to plausibly allege that any of the Defendants receive federal assistance for
purposes of the RA.  *See Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942
(3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under

---

[12] Section 504 of the RA provides:

> No otherwise qualified individual with a disability in the United States . . .
> shall, solely by reason of her or his disability, be excluded from the
> participation in, be denied the benefits of, or be subjected to discrimination
> under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

> Section 202 of the ADA provides:

> Subject to the provisions of this title, no qualified individual with a disability
> shall, by reason of such disability, be excluded from participation in or be
> denied the benefits of the services, programs, or activities of a public entity, or
> be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens*, 674 at 136 ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals"); *El*, 315 F. Supp. 3d at 843-44 (dismissing Title II ADA claim for plaintiff's failure to allege discrimination by a public entity); *see also Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411, 414-15 (3d Cir. 2011) (*per curiam*) (holding that plaintiff failed to state a viable ADA claim against any of the "non-entity defendants" that were sued in their individual capacities).  Rosado's claims under Title II of the ADA and Section 504 of the RA will be dismissed with prejudice.

### E

Rosado also seeks to assert various state law claims, including claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Fair Credit Extension Uniformity Act, and Landlord-Tenant Act of 1951, as well as claims for a violation of the implied covenant of quiet enjoyment and intentional infliction of emotional distress.[13]  (*See* Compl. at 2-3, 10-14, 53.)  The only independent basis for

---

[13] Rosado asserts that the Defendants violated "<u>Title. 18. Chapter 39. 1). 3921. 3922. 3923. 3924. 3925. 3926.</u>"  (Compl. at 3, 53.) (underline in original).  This appears to be a reference to the Pennsylvania criminal statutes defining crimes of theft and related offenses.  *See* 18 Pa. Cons. Stat. § 3901, *et seq.*  Criminal statutes generally do not give rise to a basis for civil liability.  *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."); *see also Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long

jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[14]

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011). Rosado and at least some of the Defendants are citizens of Pennsylvania such that diversity jurisdiction does not exist over Rosado's state law claims. Accordingly, any state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

## IV

For the foregoing reasons, the Court will grant Rosado leave to proceed *in forma pauperis* and dismiss his Complaint in its entirety. Rosado's claims under Title II of the ADA and Section 504 of the RA are dismissed with prejudice, and without leave to amend. Rosado's claims asserted on behalf of Wissman, and his claims pursuant to §

---

held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").

[14] Because the Court has dismissed Rosado's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

1983 and the Fair Housing Act are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Any state law claims are dismissed for lack of subject matter jurisdiction.  Considering Rosado's *pro se* status, he will be allowed to file an amended complaint if he can cure the defects the Court has noted as to his claims dismissed without prejudice.  An appropriate Order follows, which provides further instruction on amendment.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
_____
**GERALD J. PAPPERT, J.**