IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERONIMO F. ROSADO, JR., : | |
|     *Plaintiff*, : | |
| : | |
| v. : | CIVIL ACTION NO. 23-CV-3717 |
| : | |
| JAMES A. WHITCRAFT, *et al.*, : | |
|     *Defendants*. : | |

## MEMORANDUM

**Pappert, J.**                                                                                                                                                                                                **March 26, 2024**

Plaintiff Geronimo F. Rosado, Jr. initiated this civil action by filing a *pro se* Complaint raising various claims relating to his housing. On December 15, 2023, the Court granted Rosado leave to proceed *in forma pauperis* and dismissed his Complaint in its entirety. Rosado was allowed to file an amended complaint as to certain claims dismissed without prejudice, and his Amended Complaint is currently pending before this Court. For the following reasons, the Court will dismiss Rosado's Amended Complaint without further leave to amend.

I[1]

In his previously dismissed Complaint, Rosado alleged claims against James A. Whitcraft; Jeremiah F. Kane; PGM Real Estate & Associates LLC, a property management company, and its employees Dan Boyles, April Landis, Justin Gail, and

---

[1] The factual allegations are taken from Rosado's Complaint, the Amended Complaint and public dockets, of which the Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Jamie Pilkerton. (Compl. (ECF No. 2) at 8-9.)[2]  Rosado also named Anthony Kates, the property owner of 719 Strickersville Road, Landenberg, Pennsylvania. (*Id.*)

In its December 15, 2023 Memorandum and Order, the Court dismissed Rosado's Complaint in its entirety upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Rosado v. Whitcraft*, No. 23-3717, 2023 WL 8720137, at *10 (E.D. Pa. Dec. 15, 2023). Although Rosado's allegations were not "simple, concise, and direct," the Court liberally construed his claims as arising under 42 U.S.C. § 1983, the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). *Id.* at *5. Rosado also asserted numerous claims under state law, claiming that "it [was] illegal to evict a tenant for verbal complaints of Lease violations." *Id.* at *4.

The Court dismissed Rosado's federal constitutional claims because there was no factual or legal basis for concluding that any of the Defendants were state actors who could be held liable under § 1983. *Id.* at *6. Rosado's FHA claims were dismissed because he failed to tie his allegations concerning housing maintenance and eviction to his membership in a protected class. *Id.* at *8. Specifically, Rosado did not allege sufficient facts from which one could infer that a discriminatory purpose was a motivating factor behind his challenged actions, or that any Defendants' actions or practices disproportionately burdened a protected class of which Rosado is a member, so as to cause a disparate impact. *Id.* Rosado's claims under Title II of the ADA and Section 504 of the RA were dismissed with prejudice because none of the named Defendants were public entities, and he failed to allege plausibly that any of the Defendants receive federal assistance for purposes of the RA. *Id.* at *9. Finally, the

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

Court dismissed various state law claims because Rosado failed to allege a basis for diversity jurisdiction.  *Id*. at *9-10.  Rosado was allowed to file an amended complaint to cure the defects noted with respect to the claims dismissed without prejudice.  *Id*. at *10.

Rosado has filed an Amended Complaint, in which he asserts similar claims against Whitcraft and Kane.[3]  (Am. Compl. (ECF No. 6) at 2, 4.)  Whitcraft is again identified as the landlord/property owner of 401 W. Gay Street, West Chester, Pennsylvania where Rosado resided until November 2022.  (*Id*. at 4.)  Kane is identified as the legal representative for Whitcraft.  (*Id*.)  Like his initial Complaint, Rosado's Amended Complaint is somewhat disjointed, making the factual allegations difficult to discern.

Rosado asserts that he applied for and received rental assistance in April 2022 through Pennsylvania's 211 rental assistance program.  (*Id*. at 4.)  Although unclear, it appears that Rosado and Whitcraft disagreed on the amount of rent that was covered by rental assistance as opposed to the amount of rent that was in arrears.  (*Id*. at 5.)  Rosado alleges that he received enough rental assistance to cover rent payments through July 1, 2022, but Whitcraft disagreed, allegedly telling Rosado that the rent was only paid up until April 1, 2022 and payments for June and July 2022 were past due.  (*Id*.)  During this discussion, Rosado avers that Whitcraft "became hostile and argumentative," stating, "You know what?, have you thought about Me raising the rent

---

[3] It appears that Rosado has abandoned all claims against Anthony Kates, PGM Real Estate & Associates LLC and its employees, Dan Boyles, April Landis, Justin Gail, and Jamie Pilkerton.  He does not name PGM or any of these other individuals in his Amended Complaint.

3

to $750.00 to pay for the repairs your [sic] requesting, huh, Think about that I'll be in contact with you soon." (*Id.*)

On August 1, 2022, Whitcraft contacted Rosado "to meet him out in the yard for a meeting to raise the rent and discuss repairs." (*Id.* at 6.)  Whitcraft allegedly told Rosado that because Rosado did not fulfill "the lease agreement for repairs," the rent would be raised to $650 per month effective October 1, 2022.[4] (*Id.*)  Whitcraft also allegedly "demanded" that Rosado vacate the property by January 1, 2023, telling him to "stop paying rent, and to save up all money" and to contact rental assistance "to pay pass [sic] due rears in rents." (*Id.* at 3, 6.)

On August 3, 2022, Whitcraft arrived at the property with a copy of a new lease agreement. (*Id.* at 3, 7.)  Rosado refused to sign the new lease and told Whitcraft that he would be vacating the property by November 28, 2022 "due to financial reasons." (*Id.*)  Rosado contends that Whitcraft "became very Aggressive" and showed up at the apartment at least four times in September 2022 "banging, screaming, yelling [for Rosado] to come Outside or let him inside apartment to sign [the] lease agreement." (*Id.* at 7.)  Rosado contends that Whitcraft's "violent nature of harassment" frightened his "2-year-old daughter" and caused his "Fiancé [who] was present during said encounters . . . intentional and emotional Distress as each encounter was a long 7 minutes [of] non-stop harassment."[5] (*Id.* at 8.)

---

[4] This was an alleged increase of $125.00 per month. (Am. Compl. at 6.)

[5] Rosado also claims that during this time, his "bicycle was Stolen from [the] porch and never recovered" and he "believes James A. Whitcraft directly or indirectly stole it." (Am. Compl. at 8.)

On September 25, 2022, Whitcraft allegedly taped a "vacate notice" on the door of Rosado's apartment because Rosado refused to sign the new lease. (*Id.*) Rosado contends that this "misconduct constitutes a deprivation of right's [sic] under the Fair Housing Act . . . As [Rosado] made clear [he] will vacate 11/26/22." (*Id.*) The notice stated, "You are hereby given notice to vacate this apartment on or before October 31., 2022., and as advised and discussed with you, the rent for October 1st., 2022, will be $650.00 your cooperation [is] expected and appreciated." (*Id.*) On October 10, 2022, Whitcraft allegedly issued another notice to vacate, which said:

> You have (10) days from receipt Of this notice to vacate or pay rent before, I will seek permission to evict you. This is not a judicial notice document. By law[,] a court is the final authority in every eviction. And if you believe you are entitled [to] remain as a tenant, you or your lawyer may represent [your] case in court.

(*Id.* at 9.) The notice further indicated that Whitcraft was seeking to end Rosado's tenancy because he owed $1,700 in rent payments from August, September, and October 2022. (*Id.*) The notice further stated:

> Please note that the attached 9/25/22 notice posted on the above property on that date is still in effect and the landlord continues to require your vacation of the property per the terms of the lease in effect at this time as the lease is a month-to-month lease. Landlord requires [you] to vacate on or before October 31.,2022, even if the rent is paid up to date at that time.

(*Id.*) Rosado contends that the "vacate notice" posted by Whitcraft "constitutes a violation of The lease agreement . . . Under the Fair Housing Act. (*Id.*) He alleges that Whitcraft "Acted with both intentional and gross negligence Filing eviction proceedings after being informed [I] will vacate by 11/26/22." (*Id.*) Rosado contends that Whitcraft improperly changed "the terms of the Lease conditions, by changing it from a year lease to a month to month lease effective

5

09/25/22 before the yearly lease was up for failure to enter agreement." (*Id.* at 10.)

>Rosado asserts that the October 10, 2022 vacate notice also provided that:
>
>>Tenant has also not maintained the property In in [sic] proper condition, has not cooperated with the Landlord in making repairs, and Has unknown person (Women) living in the unit without permission of landlord. . . . From this point forward, please communicate only to the attorney for Mr. Whitcraft, Jerimiah F. Kane. Esquire.

(*Id.*) On October 11, 2022, Kane contacted Rosado on behalf of Whitcraft, allegedly cursing at him and telling him in an intimidating and unprofessional manner that if Rosado left the rental property now, "no action will be taken against [him]." (*Id.*)

Public dockets indicate that Whitcraft initiated an eviction proceeding against Rosado and his father on October 17, 2022. *See Whitcraft v. Rosado*, MJ-15101-LT-0000080-2022 (M.J. Chester). The dockets reflect that judgment was entered against Rosado and his father on October 26, 2022. (*Id.*) Rosado contends Whitcraft and Kane "did knowingly, intentionally and maliciously filed a false eviction against [him] to cause irreparable injuries, and intentional and emotional distress." (Am. Compl. at 11, 14.) He also alleges Defendants misrepresented the amounts owed and "filed a false judgment" against him and his father despite "Knowing father moved out." (*Id.* at 12.) Rosado claims he vacated the premises at W. Gay Street on November 30, 2022. (*Id.* at 13.) That same day, Rosado contacted Kane to "remove the judgment" but "due to [Kane's] legal misrepresentation and legal malpractice judgment was not removed." (*Id.*) Rosado avers that he paid the full amount of the judgment on March 20, 2023. (*Id.* at 13-14.)

Rosado believes Defendants' misconduct constituted unlawful discrimination prohibited by the Fair Housing Act. (*Id.* at 3, 15.)  Rosado further contends that the "Pennsylvania Fair Housing Act prohibits" the Defendants' actions insofar as they "proceeded with a false Court eviction" despite knowing that Rosado planned to vacate the premises by November 26, 2022 "due to financial reasons." (*Id.* at 14.)  He claims Whitcraft violated his "civil rights by forcing a Landlord Tenant contract to raise rents to affix repairs" and by asserting that the repairs were the responsibility of the tenant. (*Id.* at 2.)

Rosado asserts that the Defendants' "deceitful and deceptive practices" also violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Fair Credit Extension Uniformity Act, and Landlord-Tenant Act. (*Id.* at 14, 16-21.)  He asserts state law claims for legal malpractice, "intentional and gross" negligence, and intentional infliction of emotional distress. (*Id.* at 21-24.)  Rosado says he is "unable To secure a dwelling, due to the interference of falsifying public record through A false pretense of events and misrepresentation of facts causing intentional and Emotional distress and ultimately causing homelessness in the weeks to come." (*Id.* at 24.)  He seeks monetary damages and a declaratory judgment that Defendants "used deceitful and deceptive practices." (*Id.* at 25.)

II

As Rosado is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure

12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Additionally, the Court must review any claims over which subject matter jurisdiction is lacking. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). As Rosado is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III

#### A

Rosado claims his civil rights were violated when Defendants advised him that any repairs to the rental property were the tenant's responsibility and when they allegedly "forc[ed] a Landlord Tenant contract to raise rents to affix repairs." (Am. Compl. at 2.) There is no basis for a civil rights violation here, and passing references

are not sufficient to raise plausible claims. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018)

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. Section 1983 "does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996); *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ("Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).

Rosado has again failed to allege any factual or legal basis which could show that either of the Defendants are state actors who could be held liable under § 1983. *See,*

9

*e.g., Hussein v. New Jersey*, 403 F. App'x 712, 716 (3d Cir. 2010) (*per curiam*) (affirming dismissal of constitutional claims against landlord because landlord was not a state actor); *see also Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court.")  Accordingly, Rosado has not stated a plausible constitutional claim against either Defendant and any § 1983 claims will be dismissed.

B

Citing to 42 U.S.C. § 3604(a) and (b), Rosado alleges that Defendants' misconduct constituted unlawful discrimination prohibited by the Fair Housing Act. (Am. Compl. at 3, 15.)  He contends the October 10, 2022 notice to vacate the premises violated the "lease agreement . . . Under the Fair Housing Act." (*Id.* at 9.)  Rosado further asserts that the "Pennsylvania Fair Housing Act prohibits" the Defendants' actions because they "proceeded with a false Court eviction" despite knowing that he planned to vacate the premises by November 26, 2022 "due to financial reasons." (*Id.* at 14.)

As noted in the Court's prior Memorandum, the FHA makes it illegal to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." *Rosado*, 2023 WL 8720137, at *7 (citing 42 U.S.C. § 3604(b)).  The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by

10

section . . . 3604 . . . of this title." 42 U.S.C. § 3617. The regulations associated with § 3617 make clear that the section prohibits acts directed at individuals "because of" their membership in a protected class. 24 C.F.R. § 100.400(c)(2) (listing prohibited conduct to include "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of* the race, color, religion, sex, handicap, familial status, or national origin of such persons" (emphasis added)).

Rosado does not state a plausible FHA claim. The FHA is a federal anti-discrimination statute intended to address discriminatory housing practices targeting members of specific protected classes. *See Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011) ("The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class."); *Mitchell v. Cellone*, 389 F.3d 86, 87 (3d Cir. 2004) ("The Fair Housing Act was designed to provide nationwide fair housing to minorities who had previously been victims of invidious racial discrimination."). Rosado does not allege that he was discriminated against on account of his membership in a protected class. This is fatal to any FHA claim. *See, e.g.*, *Dew v. S. Columbia Terrace, LLC*, 854 F. App'x 460, 462 (3d Cir. 2021) (affirming dismissal of FHA claim where the plaintiff failed to allege his membership in a protected class and noting that discrimination based on source of income is not protected by the FHA); *Davis v. Rubin*, No. 20-6271, 2020 WL 7624833, at *3 (E.D. Pa. Dec. 22, 2020) (dismissing FHA interference and retaliation claims on screening where plaintiff does not link alleged harassment to "her exercise or enjoyment of a right under the FHA" and does not allege a protected activity involving complaints about discrimination).

11

C

As in his initial Complaint, Rosado asserts various state law claims, including claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Fair Credit Extension Uniformity Act, and Landlord-Tenant Act. (Am. Compl. at 14, 16-21.) He also asserts claims for legal malpractice, "intentional and gross" negligence, and intentional infliction of emotional distress. (*Id.* at 21-24.) As Rosado was previously advised, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[6]

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and Zam*belli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011). It appears from the Amended Complaint that Rosado and the Defendants are citizens of Pennsylvania such that diversity jurisdiction does not exist. (*See* Am. Compl. at 4.) Accordingly, any state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

---

[6] Because the Court has dismissed Rosado's reasserted federal claims, it will not exercise supplemental jurisdiction over any state law claims in the Amended Complaint.

IV

For the foregoing reasons, the Court will dismiss Rosado's Amended Complaint. His federal claims will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and his state law claims will be dismissed for lack of jurisdiction without prejudice to Rosado's right to refile those claims in the appropriate state court. Since Rosado was given an opportunity to amend the defects in his claims and was unable to do so, the Court concludes that further attempts to amend would be futile. *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**